**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TIMOTHY ERIC ALSTON,

        Petitioner,

vs.                     Case No.:    3:16-cv-867-J-32PDB
                                                3:12-cr-118-J-32PDB

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Timothy Eric Alston's pro se Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, § 2255

Motion)[1], exhibits, and Memorandum of Law and Fact (Civ. Doc. 6, Memorandum).[2]

The United States has responded (Civ. Doc. 8, Response), and Petitioner has filed a

reply brief (Civ. Doc. 10, Reply). Thus, the case is ripe for a decision.

---

[1]    Citations to the record in the criminal case, United States vs. Timothy Eric Alston, No. 3:12-cr-118-J-32PDB, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-867-J-32PDB, will be denoted "Civ. Doc. __."

[2]    The Court only considers the 16 page main document of the Memorandum. Before he filed the § 2255 Motion, Petitioner moved to exceed the page limit (Crim. Doc. 162), and a United States Magistrate Judge granted the request to the extent Petitioner could file 15 additional pages beyond the § 2255 form (Crim. Doc. 163). Still, Petitioner's initial memorandum was 36 pages long. (See Civ. Doc. 2). The Court struck the 36-page memorandum and ordered Petitioner to refile a memorandum no longer than 15 pages. (Civ. Doc. 4).

Petitioner refiled the Memorandum, with the main document being 16 pages (including the signature page) (Civ. Doc. 6) and the rest of the original memorandum being attached as a 23-page "exhibit" (Civ. Doc. 6-1). Because the "exhibit" is an attempt to circumvent the page limitation, the Court will strike it. There is no reason why Petitioner could not have presented all his claims within the space allotted by the § 2255 form and the additional 15 pages allowed by the Magistrate Judge. The Court has considered Petitioner's reply brief.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the motion. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's § 2255 Motion is due to be denied.

## I.    Background

After Petitioner was arrested in a sting operation, a grand jury charged him with one count of attempting to possess less than 50 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846, and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. Doc. 1, Indictment). Petitioner pled not guilty. (See Crim. Doc. 14).

Petitioner moved to suppress all physical evidence (including two loaded firearms) seized during a warrantless search of his car. (Crim. Doc. 24, Motion to Suppress). Following a suppression hearing, a United States Magistrate Judge recommended that the Court deny the motion to suppress. (Crim. Doc. 31, Report and Recommendation). Petitioner objected to the report and recommendation (Crim. Doc. 37, Objections), but the Court overruled the objections, adopted the report and recommendation, and denied the motion (Crim. Doc. 41, Order Denying Motion to Suppress).

The case proceeded to a trial before a jury. (See Crim. Docs. 134, 135). After hearing two days of testimony and argument, the jury found Petitioner guilty of both counts. (Crim. Doc. 84, Jury Verdict).

The Probation Office prepared a Presentence Investigation Report (PSR), in which it calculated Petitioner's total offense level to be 30 and his Criminal History Category to be VI, yielding an advisory sentencing range of 168 to 180 months in prison. PSR at ¶¶ 29, 44, 77. According to the PSR, the base offense level was 24 because Petitioner was convicted of being a felon in possession of a firearm after receiving two prior convictions for a crime of violence or a controlled substance offense. PSR at ¶ 20; U.S.S.G. § 2K2.1(a)(2). The two prior convictions were for (1) possession of cocaine and marijuana with intent to distribute under Georgia law, and (2) aggravated assault under Georgia law. Id. at ¶ 20; see also id. at ¶¶ 26, 40, 41. Petitioner received a four-level enhancement under § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense, as well as a two-level enhancement under § 3C1.1 for obstruction of justice. Id. at ¶¶ 21, 24. Petitioner's Criminal History Category was VI because the Probation Office recommended that he was a career offender under U.S.S.G. § 4B1.1 based on the same prior convictions that influenced the base offense level. Id. at ¶¶ 26, 44.

Petitioner did not object to the base offense level or the career offender enhancement.[3] However, he did object to the weapon enhancement under §

---

[3]    At the sentencing hearing, counsel mentioned that Petitioner wanted him to object to the career offender enhancement, but counsel explained that he had researched the issue and found no merit in objecting to the career offender classification. (Crim. Doc. 125, Sentencing Tr. at 14-15).

2K2.1(b)(6)(B) and the obstruction-of-justice enhancement under § 3C1.1. (Crim. Doc. 95, Objections to PSR at 2-6). Petitioner also argued for a variance below the Guidelines range based on the 18 U.S.C. § 3553(a) factors. (Id. at 6-11).

At the sentencing hearing, the Court overruled both Guidelines objections (Crim. Doc. 125 at 11-12, 14), thereby sustaining the PSR's Guidelines calculation. However, the Court varied well below the Guidelines range by sentencing Petitioner to concurrent terms of 60 months in prison as to Count One and 92 months in prison as to Count Two, for a total prison sentence of 92 months. (Id. at 30-31); (Crim. Doc. 107, Amended Judgment).

Petitioner appealed the judgment to the Eleventh Circuit Court of Appeals, challenging only the denial of the motion to suppress. United States v. Alston, 598 F. App'x 730, 731 (11th Cir. 2015). The Eleventh Circuit rejected the challenge, holding that under the automobile exception, police officers had probable cause to believe his vehicle contained evidence of criminal activity. Id. at 734 (citing United States v. Ross, 456 U.S. 798, 799-825 (1982); United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007)). Thus, the Eleventh Circuit held that the warrantless search was valid and affirmed Petitioner's conviction and sentence. Id. at 735.

After the Eleventh Circuit issued its opinion, Petitioner filed a 44-page pro se "Motion to Withdraw Counsel," asserting a breakdown in communications and complaining that appellate counsel failed to raise various issues. United States v. Alston, No. 14–10416 (11th Cir.), ECF Entry of Mar. 9, 2015 (Motion to Discharge Counsel). The Eleventh Circuit denied the motion in a substantive 7-page order. Id., ECF Entry of April 10, 2015; (Civ. Doc. 8-3, USCA Order Denying Motion to Discharge

Counsel). The court "note[d] that Appellant's current counsel is the third attorney to represent Appellant in this case, which suggests that Appellant may have difficulty getting along with and collaborating with counsel." Id. at 2. The court went on to explain that the arguments Petitioner wanted appellate counsel to make lacked merit, and therefore denied the motion. Id. at 3-7.

Thereafter, Petitioner filed a counseled petition for panel rehearing, which the Eleventh Circuit denied, 11th Cir. ECF Entry of July 2, 2015, and a petition for a writ of certiorari, which the United States Supreme Court denied, Alston v. United States, 136 S. Ct. 560 (2015) (Mem.). Petitioner then timely filed the instant § 2255 Motion.

## II. Arguments

In Grounds One and Two of the § 2255 Motion and Memorandum, Petitioner argues, for various sub-reasons, that the Court miscalculated his Guidelines range and erred in sentencing him as a career offender. In Ground Three, Petitioner argues that the Court erred in denying the motion to suppress. In Ground Four, Petitioner raises a laundry list of unrelated claims, including the denial of pretrial release, an alleged violation of the Speedy Trial Act, and an alleged violation of the Double Jeopardy Clause.

In response, the United States argues that Petitioner's claims lack merit and were resolved against him on direct appeal. (Civ. Doc. 8 at 5-7). The United States also construes Petitioner's claims as being raised under the guise of ineffective assistance of counsel, which the United States argues lack merit as well. (Id. at 7-10).

While the Court agrees that the claims lack merit, the Court disagrees that Petitioner raises his claims under the ineffective assistance framework. Courts will liberally construe pro se pleadings, but a court does not have license to rewrite the litigant's claims. <u>Campbell v. Air Jamaica, Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation omitted). Throughout the § 2255 Motion and Memorandum, nowhere does Petitioner allege ineffective assistance of counsel, cite <u>Strickland</u>[4] or its progeny, or cite the Sixth Amendment's right-to-counsel clause. Petitioner makes only a few sparse, single-sentence remarks about counsel not raising an issue – and even so, the comments are not made in the context of asserting ineffective assistance as a ground for relief. (<u>See</u> Civ. Doc. 1 at 4, 5, 7, 8; Civ. Doc. 6 at 3). Petitioner does not allege that counsel's performance was deficient under objective standards of professional conduct, nor does Petitioner allege that any omission was prejudicial under <u>Strickland</u>. The gravamen of the § 2255 Motion and Memorandum is that the Court misapplied the career offender guideline and § 2K2.1(b)(6)(B), and that the Court itself erred in other ways. Thus, the Court construes Petitioner's arguments just as they are presented: as direct challenges to his conviction and sentence.[5]

---

[4] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To establish that counsel gave constitutionally ineffective assistance, a petitioner must prove that (1) counsel's performance was objectively unreasonable, and (2) but for counsel's error, there is a reasonable probability the outcome of the proceeding would have been different. <u>Id.</u> at 687, 694.

[5] Even if the Court construed the isolated comments about counsel not raising an argument as ineffective assistance claims, the allegations are too conclusory to warrant relief. <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991). Moreover, the underlying arguments either lack merit or were resolved against Petitioner on direct appeal, as explained below.

## III.    Law

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255 a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral challenges on four grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

### B. Procedural Default

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing United States v. Frady, 456 U.S. 152, 165 (1982)). "Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Lynn, 365 F.3d at 1234). "This rule generally applies to all claims, including constitutional claims." Lynn, 365 F.3d at 1234 (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).

A petitioner can avoid a procedural default by showing either (1) cause for and

actual prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). With respect to "cause and prejudice," "to show cause for procedural default, [a petitioner] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the petitioner's] own conduct." Id. at 1235 (citing Smith v. Jones, 256 F.3d 1135, 1145 (11th Cir. 2001)). Ineffective assistance of counsel may constitute cause for a default, but only if the ineffective assistance claim has merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). Petitioner must also show that "actual prejudice" resulted from the claim not being raised on direct appeal. Lynn, 365 F.3d at 1234 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). The second exception, actual innocence, "is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay, 657 F.3d at 1196 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The actual innocence exception is supposed to "remain 'rare' and … only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321.

## IV.    Discussion

### A. Grounds One and Two

#### 1.  Objection to Career Offender Enhancement

Petitioner first argues that the Court erred in sentencing him as a career offender under U.S.S.G. § 4B1.1. (Civ. Doc. 1 at 4-5; Civ. Doc. 6 at 5-15). The career offender classification did not affect his Guidelines offense level, but it did determine his Criminal History Category.[6] Between Grounds One and Two, Petitioner suggests five reasons why the career offender enhancement was erroneous. First, Petitioner suggests that the instant offenses of conviction (under 21 U.S.C. § 841 and 18 U.S.C. § 922(g)) do not qualify him for the career offender enhancement. Second, Petitioner argues that the two prior Georgia convictions behind the career offender enhancement do not count as separate convictions. Third, Petitioner argues that the career offender enhancement is unlawful because § 4B1.2(a)'s residual clause is unconstitutionally vague in light of <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). Fourth, Petitioner, contends that his prior Georgia convictions do not meet the definition of a "crime of violence" or "controlled substance offense" under the categorical approach. Finally, in the Memorandum, Petitioner argues that his prior Georgia convictions could not serve

---

[6]    Petitioner's base offense level was set by U.S.S.G. § 2K2.1(a)(2) for being convicted of possession of a firearm by a convicted felon after two prior convictions for a crime of violence or a controlled substance offense. Because the commentary to § 2K2.1 gives the terms "crime of violence" and "controlled substance offense" the same definition as that given under the career offender provision, several of Petitioner's objections to the career offender enhancement are equally applicable to § 2K2.1(a)(2). But because those same arguments do not warrant § 2255 relief for the reasons below, any objection to the application of § 2K2.1(a)(2) likewise does not warrant relief.

as career offender predicates because he entered <u>Alford</u>[7] pleas and did not actually admit the facts of the charges. (Civ. Doc. 6 at 14-16).

Petitioner's challenge to the career offender enhancement does not warrant relief for two independent reasons. First, as the United States points out, Petitioner objected to the career offender enhancement on direct appeal and the Eleventh Circuit resolved the issue against him. As noted earlier, Petitioner filed a 44-page pro se "Motion to Withdraw Counsel" in the Eleventh Circuit, in which he complained that appellate counsel had failed to raise various arguments. The court found that most of Petitioner's complaints did not merit discussion, but it did address his complaint about the career offender enhancement. (Civ. Doc. 8-3). As the court explained:

> Second, Appellant contends that the district court erred when it sentenced him as a "career offender" under the United States Sentencing Commission Guidelines. According to Appellant, his prior convictions of possession with intent to distribute cocaine and marijuana do not constitute drug trafficking under Georgia law, where he was convicted previously. Appellant points to the amount of drugs involved in his prior convictions – 2.36 grams of cocaine and 17.3 grams of marijuana – and asserts that his actions were not a "serious drug offense," but rather, simple possession of drugs. In support of his argument, Appellant emphasizes that the relevant Georgia statute requires 28 grams of cocaine and 50 pounds of marijuana for trafficking. <u>See</u> O.C.G.A. § 16-13-31.
>
> Under the sentencing guidelines, a defendant is considered to be a "career offender" if (1) he is at least 18 years old when convicted of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. <u>See</u> U.S.S.G. § 4B1.1. The sentencing guidelines further define the term "controlled substance offense" as "an offense under federal or state law

---

[7]   <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). In <u>Alford</u>, the Supreme Court held that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." <u>Id.</u> at 37.

punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Here, Appellant's career-offender status resulted from his convictions for (1) aggravated assault and possession of a firearm during the commission of a felony; and (2) possession with intent to sell marijuana and possession with intent to distribute cocaine. These two prior felony convictions clearly qualify as predicate convictions for purposes of the career-offender guideline.

First, Appellant does not contest the fact that his conviction for aggravated assault and possession of a firearm during the commission of a felony count as a "crime of violence." Second, Appellant's conviction for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute in violation of O.C.G.A. § 16-13-30(b) qualifies as a "controlled substance offense." Not only is it designated as a felony under the Georgia Code, see O.C.G.A. §§ 16-30-30(b), (d) (making it a felony to "… possess with intent to distribute any controlled substance"), but where, as here, the offense of possession with intent to distribute cocaine is punishable by a term of imprisonment exceeding one year, it is expressly identified by the guidelines as a qualifying "controlled substance offense." See U.S.S.G. § 4B1.2(b).

(Civ. Doc. 8-3 at 4-6). Thus, the court concluded that Petitioner properly qualified as a career offender, such that appellate counsel was not required to raise the issue on appeal. (Id. at 6).

"Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citations omitted). "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012). Because the

Eleventh Circuit determined that Petitioner's career offender enhancement was not erroneous, he may not relitigate this issue under § 2255. The only potentially relevant intervening change in the law is the Supreme Court's holding in <u>Johnson</u>, 135 S. Ct. 2551, that the Armed Career Criminal Act's residual clause is unconstitutionally vague. But <u>Johnson</u> has no impact on the career offender sentence, because the Supreme Court later held that the void-for-vagueness doctrine does not apply to advisory sentencing guidelines, including the career offender provision's residual clause. <u>Beckles v. United States</u>, 137 S. Ct. 886, 892, 894 (2017). As such, Petitioner is barred from relitigating the career offender enhancement.

Second, to the extent Petitioner argues that the offenses of conviction and his prior convictions do not qualify as career offender predicates, he merely alleges a misapplication of the career offender guideline. However, "erroneously designating a defendant as a career offender [ ] is not a fundamental defect that inherently results in a complete miscarriage of justice," and therefore it is not a defect that is cognizable under § 2255. <u>Spencer v. United States</u>, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). "A misapplication of advisory sentencing guidelines … does not violate an 'ancient' right, nor does it raise constitutional concerns." <u>Id.</u> at 1140. Thus, "[w]hen a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." <u>Id.</u> at 1139.[8]

---

[8]     In any event, each of Petitioner's current objections to the career offender enhancement lacks merit.

## 2. Objection to § 2K2.1(b)(6)(B) enhancement

Petitioner also objects to receiving a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense. (Civ. Doc. 6 at 2-5). Police officers recovered two loaded guns from the car that Petitioner drove to the undercover drug transaction, which was the same car in which Petitioner carried over $4,000 in cash to use for purchasing 5.5 pounds of marijuana. <u>See</u> PSR at ¶¶ 8-12, 21. Petitioner's counsel objected to the enhancement at the sentencing hearing, but the Court overruled the objection. (Crim. Doc. 125 at 11-12). Petitioner did not argue against the enhancement on direct appeal.

Petitioner's challenge to the weapon enhancement fails for three independent reasons. First, the claim is procedurally defaulted because the claim was available on direct appeal but Petitioner did not raise it. <u>McKay</u>, 657 F.3d at 1196; <u>Lynn</u>, 365 F.3d at 1234. Petitioner has not established that he can avoid the default under the cause-and-prejudice standard or the actual innocence exception. Second, because Petitioner merely challenges the Guidelines calculation, which even if erroneous does not render his sentence illegal, the claim is not cognizable under § 2255. <u>Spencer</u>, 773 F.3d at 1138-41. Finally, the claim lacks merit because the weapon enhancement properly applied. Section 2K2.1(b)(6)(B) applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia" "because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively." U.S.S.G. § 2K2.1, Application Note 14(B). As noted, police recovered two firearms from the vehicle that Petitioner drove to the drug transaction. Petitioner carried over $4,000 in drug-

purchase money in the same car, and he planned to drive the drugs back to Georgia in the same car. The PSR also suggests that shortly before he was arrested, Petitioner placed a sample of marijuana in his vehicle. PSR at ¶ 10. Although Petitioner testified at trial that an individual named "Jay" planted the guns in his car, the Court rejected this explanation as not only "far-fetched" (Crim. Doc. 125 at 9), but as warranting an enhancement for obstruction of justice (id. at 12-14). Thus, the weapon enhancement applied because Petitioner carried two loaded guns that facilitated, or had the potential to facilitate, a drug trafficking offense. See U.S.S.G. § 2K2.1, Application Note 14(A). Petitioner's objection thus lacks merit, and Grounds One and Two are denied.

### B. Ground Three

Next, Petitioner argues that the Court erred in denying the motion to suppress "based on misleading and improper, tainted information." (Civ. Doc. 1 at 6). Petitioner lists several reasons why he believes the Court erred in denying the motion to suppress, including: (1) that the Court overlooked "material facts, policies, and procedures of the Jacksonville Sheriff's Office," (2) the Court misapprehended or misinterpreted state laws, (3) the government's affidavits, witnesses, and confidential informant were not credible or reliable, and (4) there were unspecified errors in the "finding[s] of fact and conclusion[s] of law" – by which Petitioner presumably refers to the Magistrate Judge's report and recommendation. (Id.). However, Petitioner does not elaborate on any of these reasons.

This claim does not merit relief because the issue was raised and resolved against Petitioner on direct appeal. The sole issue that Petitioner argued on appeal was whether this Court should have granted his motion to suppress. <u>Alston</u>, 598 F. App'x at 731. The Eleventh Circuit indicated that the search of Petitioner's car, which yielded two loaded firearms, was a lawful search incident to arrest. <u>Id.</u> at 733-34. But ultimately the court "affirm[ed] the denial of the motion to suppress alternatively under the automobile exception because officers had probable cause to believe that the vehicle contained evidence of criminal activity." <u>Id.</u> at 734. The court explained:

> …. In contrast to the search-incident-to-arrest exception, the automobile exception "allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." <u>Gant</u>, 556 U.S. at 347, 129 S. Ct. at 1721.[9]
>
> This Court has explained that the automobile exception authorizes a search of a vehicle if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." <u>Lindsey</u>, 482 F.3d at 1293. For the mobility requirement, the car must simply be operational. <u>See</u> <u>id.</u> The fact that Alston drove the Maxima to the drug deal shows that it was operational. "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." <u>Id.</u> (quotation marks omitted).
>
> Here, the facts and circumstances known to the officers, construed in the light most favorable to the government, show that Alston drove from Savannah, Georgia, to Jacksonville, Florida, to purchase marijuana and cocaine, negotiated the purchase of five-and-a-half pounds of marijuana, possessed several thousands of dollars to complete the transaction, and then attempted to offer payment for the marijuana. Furthermore, in conducting the arrest of Alston's passenger, an officer observed in plain view a "wad of cash" arranged in "drug folds," which was consistent with what he had seen in other drug investigations. Given the reason for which Alston and his passenger were at the flea market, the officers reasonably could have concluded that Alston and his passenger intended to use the money to purchase drugs.

---

[9]     <u>Arizona v. Gant</u>, 556 U.S. 332 (2009).

Under the totality of the circumstances, we are satisfied that probable cause existed to believe that the car, which was being used as an instrument of drug-trafficking activity, contained additional evidence of drug-trafficking activity, such as drug paraphernalia, cash, or records of drug transactions, among other things. See, e.g., United States v. Brazel, 102 F.3d 1120, 1146–47 (11th Cir. 1997) (finding probable cause to justify a warrantless search of the vehicle because circumstances indicated that the car was used to facilitate drug offenses).

Because probable cause existed to search the vehicle for evidence of drug-trafficking activity, officers were allowed to search the areas where the two guns were found—the glove compartment and the area under the driver's seat. See Ross, 456 U.S. at 825, 102 S. Ct. at 2173 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Both of these places could have, and in fact did, conceal evidence of drug-trafficking activity. Cf. United States v. Cruz, 805 F.2d 1464, 1474 (11th Cir. 1986) (noting that "guns are a tool of the drug trade" and that "[t]here is a frequent and overpowering connection between the use of firearms and narcotics traffic"). Accordingly, we affirm the district court's denial of the motion to suppress.

Alston, 598 F. App'x at 734-35 (footnotes omitted).

Petitioner does not explain how any alleged misapprehension of the facts or state law undermines the Eleventh Circuit's analysis of why police officers had probable cause to search his vehicle. Nor has Petitioner pointed to any controlling change in Fourth Amendment law since the Eleventh Circuit ruled against him on direct appeal. As such, Petitioner is barred from relitigating this issue under § 2255. Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343. Ground Three is due to be denied.

## C. Ground Four

Finally, Petitioner raises a list of miscellaneous claims, consisting of the following: (1) that he was improperly denied bail or pretrial release, (2) that the delay between his arrest and indictment violated Fed. R. Crim. P. 5(a), (3) that the delay

between the indictment and the trial violated the Speedy Trial Act, (4) that his right to be free from double jeopardy was violated because he was sentenced for the same offense in both state court and federal court, and (5) that the lifetime ban on receiving federal benefits, under 21 U.S.C. § 862, is unlawful.[10] Although not listed under any ground, Petitioner also seems to raise another list of miscellaneous claims on page 9 of the § 2255 form, including the alleged use of excessive force during his arrest and violations of Florida state law. (Civ. Doc. 1 at 9).

Petitioner does not provide supporting facts for these conclusory allegations. For that reason alone, the claims are due to be denied. See Rule 2(b), Rules Governing § 2255 Proceedings for the United States District Court (requiring that the § 2255 motion "state the facts supporting each ground"); see also, e.g., Lynn, 365 F.3d at 1238-39 (conclusory allegations of government misconduct will not support § 2255 relief); Tejada, 941 F.2d at 1559 (allegations of ineffective assistance of counsel, unsupported by specifics, do not warrant an evidentiary hearing); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (en banc) ("'The petitioner will not be entitled to an evidentiary hearing when his claims are merely 'conclusory allegations unsupported by specifics' ....") (citation omitted).

Moreover, Petitioner could have raised all of the claims listed in Ground Four on direct appeal, but he did not do so. As such, the claims are procedurally defaulted. McKay, 657 F.3d at 1196; Lynn, 365 F.3d at 1234. Petitioner has not shown he can avoid the default under the cause-and-prejudice or actual innocence exceptions.

---

[10]     As part of the judgment, Petitioner was deemed permanently ineligible for certain federal benefits under 21 U.S.C. § 862. (Crim. Doc. 107 at 7).

Finally, at least some of Petitioner's claims are not cognizable under § 2255 or are meritless. Petitioner's complaint about being denied pretrial release does not implicate the legality of his conviction and sentence, the Court's jurisdiction, or a fundamental miscarriage of justice. <u>See</u> 28 U.S.C. § 2255(a); <u>Spencer</u>, 773 F.3d at 1138-41. Petitioner's conclusory allegation that police used excessive force when arresting him, without more, also does not implicate the legality of his conviction and sentence. And Petitioner's claim that he suffered a Double Jeopardy violation "under dual soverignty" (sic) is meritless. (Civ. Doc. 1 at 8). Petitioner was arrested and charged in state court for the sale of cannabis and possession of a firearm by a convicted felon based on the same conduct for which he was convicted here. <u>See</u> PSR at ¶ 48. But the PSR reflects that the state court charges were dismissed in lieu of federal prosecution. <u>Id.</u> Accordingly, Petitioner is not entitled to relief on the assorted claims listed in Ground Four and on page 9 of the § 2255 Motion.[11]

### D. Reply Brief

In his reply brief, Petitioner claims for the first time that (1) his appointed attorneys gave ineffective assistance by failing to raise various issues, (2) the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 was erroneous, and (3) there was a mismatch between the indictment and the proof at trial. (Civ. Doc. 10).

---

[11] The Court also doubts that Petitioner's complaint about his permanent ineligibility for federal benefits is cognizable under § 2255 because § 2255 cannot be used to challenge non-custodial aspects of the sentence. <u>Mamone v. United States</u>, 559 F.3d 1209, 1210-11 (11th Cir. 2009); <u>Blaik v. United States</u>, 161 F.3d 1341, 1342-43 (11th Cir. 1998).

To begin with, a party cannot raise new claims in a reply brief without first obtaining leave of the court to add the new claims. Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018); Snyder v. United States, 263 F. App'x 778, 779-80 & n.2 (11th Cir. 2008). Because Petitioner did not obtain leave of the Court to add these new claims, the allegations are not properly before the Court.

Additionally, the record refutes Petitioner's allegation that his attorneys were ineffective for ignoring meritorious issues. Petitioner's own attachments to the reply brief reflect that each of Petitioner's lawyers considered the matters he wanted them to raise, researched the issues, and wrote Petitioner to explain why the proposed issues lacked merit. (See Civ. Doc. 10-1, Letter from Wade Rolle; Civ. Doc. 10-2, Letters from Charles Truncale; Civ. Doc. 10-3, Letter from Lisa Call). This is confirmed by the Eleventh Circuit's order denying Petitioner's pro se "Motion to Withdraw Counsel." Alston, No. 14–10416 (11th Cir. Apr. 10, 2015). The court found that none of the issues Petitioner complained about not being raised had merit. Id. The court also found there was no merit to Petitioner's claim that there was a variance between the indictment and the proof at trial. Id. at 3-4. Therefore, Petitioner is not entitled to relief on any of the new arguments raised in the reply brief.

## V.    Conclusion

Having considered each of Petitioner's claims, and finding that none warrants § 2255 relief, it is hereby **ORDERED**:

1.   Petitioner Timothy Eric Alston's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is **DENIED**.

2. The Clerk should enter judgment in favor of the United States and against Petitioner, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of June, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner